IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PEDRO HERNANDEZ III; CARMEN
HERNANDEZ; ENRIQUE HERNANDEZ;
YESENIA RAMIREZ; and SELENA
HERNANDEZ, a Minor Child, by and through
her Parents and Next Friends, ENRIQUE
HERNANDEZ and YESENIA RAMIREZ,

        Plaintiffs,

        vs.

ROBERT CONDE; DEAN AKINGS;
ROD WEBER; BRIAN DOUGHERTY;
R. SCOTT HARPER; and CHRIS SMEE,

        Defendants.

Case No. 05-1103-JTM

## MEMORANDUM AND ORDER

This matter comes before the court on the defendant Robert Conde's Motion for Summary

Judgment (Dkt. No. 74). Defendant brings an individual motion seeking qualified immunity,

arguing that his actions were objectively reasonable. Plaintiffs object to this assertion. After

reviewing the parties' arguments, the court finds in favor of defendant.

## I. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any

material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P.

56(c). In considering a motion for summary judgment, the court must examine all of the evidence in

a light most favorable to the opposing party. Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th

Cir. 1998).   The party moving for summary judgment must demonstrate its entitlement to summary

judgment beyond a reasonable doubt.  Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir.

1993).  The moving party need not disprove the nonmoving party's claim or defense; it need only

establish that the factual allegations have no legal significance.  Dayton Hudson Corp. v. Macerich

Real Estate Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some

metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must

come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))

(emphasis in Matsushita).  The opposing party may not rely upon mere allegations or denials

contained in its pleadings or briefs. Rather, the opposing party must present significant admissible

probative evidence supporting that party's allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 256 (1986).

## II. FINDINGS OF FACT

Defendant Robert Conde has been a law enforcement officer since 1997.  During that time

he has been involved in numerous narcotics cases.

### A. The Morning of May 15, 2003

On or about the morning of May 15, 2003, a woman named Karen Byerly, a/k/a Karen

Henderson, appeared at the Great Bend Police Department and offered to act as a cooperating

individual to assist the police in the purchase of illegal drugs.  Byerly stated she had the knowledge

and ability to purchase illegal drugs in the Great Bend, Kansas, and Ness City, Kansas areas.

Because of Byerly's alleged medical conditions, the Great Bend Police Department's lack of

jurisdiction in Ness County, Kansas, and his inability to do undercover work, Detective Terry

2

Millard provided the Kansas Bureau of Investigation the opportunity to use Byerly as a cooperating individual.

On May 15, 2003, KBI Special Agent in Charge Kelly Ralston met with Byerly at the Great Bend Police Department. He then assigned Special Agents Brian Carroll and Robert Conde to commence an investigation and attempt to use Byerly to purchase illegal drugs. Agent Conde was to handle any undercover work during the investigation.

Later that morning, Agent Conde successfully used Byerly to purchase marijuana from an individual by the name of Blake Miller. Later that same day, Byerly indicated that she could facilitate the purchase of 1/8 ounce of cocaine through an individual named Travis Underwood. Byerly informed Agent Conde that she could contact Underwood at the funeral of Jesse Bitner in Great Bend, Kansas.

Agent Conde and Byerly traveled to the funeral home. Byerly entered the funeral home and propositioned Underwood for drugs, while Agent Conde waited in his vehicle. Upon her return, Byerly indicated Underwood would make contact with them later to set up the cocaine sale. Later that same afternoon, Underwood made contact and offered to purchase drugs for Byerly and Agent Conde. At no time on May 15, 2003 was Underwood aware that Byerly and Agent Conde were working for a law enforcement agency.

**B. The Evening of May 15, 2003**

At approximately 6:30 p.m., after receiving a phone call from Underwood, Agent Conde and Byerly picked up Underwood at the corner of Lakin and Morphy Streets in Great Bend, Kansas. After a brief conversation, Underwood guided the vehicle driven by Agent Conde to the parking lot of Peterson Mechanical, Inc., located at 705 Heizer Street in Great Bend.

Agent Conde parked in the Peterson Mechanical, Inc., parking lot and gave Underwood

$160 in marked currency with which to purchase cocaine.

Agent Conde represented in the search warrant that Underwood then stated and gestured that he was walking toward the white trailer house with blue/green trim on the east side of Heizer Street, just south of the railroad tracks.

Underwood exited the vehicle and walked south on Heizer Street, crossing the railroad tracks. At this point, Agent Conde lost sight of Underwood. Agent Conde then moved his car close to Heizer Street to get a better vantage point of the direction in which Underwood had traveled.

Approximately ten minutes later, Agent Conde saw Underwood exit a trailer home on Heizer Street. The parties dispute whether this was the trailer home at 340 Heizer or a trailer home nearby. Agent Conde kept Underwood in full sight from the time Underwood exited a trailer home on Heizer Street until he got back into Agent Conde's vehicle. Once Underwood was seated in Agent Conde's vehicle, he stated the deal went well and handed the cocaine to Agent Conde. Agent Conde then returned Underwood to the corner of Lakin and Morphy Street, handed Underwood a $20 bill for his help, and Underwood exited the vehicle. Once the cocaine purchase was complete, Agent Conde returned to the Great Bend Office and tested a portion of the substance that Underwood had purchased. The test was positive for cocaine. Agent Conde then advised his superior, Ralston, of the drug buy. Ralston instructed Agent Conde to obtain a search warrant for that location.

When Agent Conde brought Underwood in for questioning on May 19, 2003, Underwood told Conde that he had never made the buy at 340 Heizer Street, that the buy had been made at Baudillo's house, the trailer house to the south of 340 Heizer, and that he had never been inside 340 Heizer Street before. 340 Heizer Street is the first trailer house south of the railroad tracks and on the east side of Heizer Street.

**C. The Search Warrant**

Special Agent Keith Lumry, Detective Terry Millard, and Agent Conde drove back to the location where the cocaine buy had taken place. Agent Conde represented the address was 340 Heizer Street, and included a physical description in the Affidavit and Application for Search Warrant. Agent Conde then returned to the KBI Regional Office where he completed an Affidavit and Application for Search Warrant. Once the Affidavit and Application for Search Warrant was finished, Agent Conde represents that he and Detective Rick Popp went to Barton County District Court Chief Judge Mike Keeley's residence at approximately 10:45 p.m. Upon arrival, they presented the Affidavit and Application for Search Warrant for approval and requested the issuance of a warrant.

Agent Conde represents that he stated both in the Affidavit and Application for Search Warrant and verbally to Judge Keeley that he lost sight of Underwood and did not see which trailer Underwood entered. Agent Conde represents that he informed Judge Keeley he had seen Underwood exit the trailer home at 340 Heizer Street and he kept Underwood in full view as Underwood walked back to the vehicle and eventually handed Agent Conde the cocaine. Judge Keeley approved the Affidavit and Application for Search Warrant and issued a Search Warrant for 340 Heizer Street, Great Bend, Kansas. The Search Warrant issued was facially valid.

Following a briefing at the KBI Regional Office, the Search Warrant was executed by the Great Bend Police Department's Special Services Team on the plaintiffs' residence at 340 Heizer Street. Agent Conde was not directly involved in the forced entry or initial execution of the Search Warrant, though he obtained the necessary warrant. Agent Conde assisted in the search of the residence once it was safely cleared by the Great Bend Police Department.

On May 15, 2003, Agent Conde represents that no one, including Travis Underwood or CI Karen Byerly, ever informed him that they believed Underwood went to any residence other than

340 Heizer Street to make the cocaine purchase.  Agent Conde represents that he never received any phone calls on May 15, 2003 from any person concerning the location where Underwood had purchased the cocaine.  On May 15, 2003, Agent Conde represents that no information was ever conveyed by any law enforcement personnel to Agent Conde suggesting that Underwood might have purchased the cocaine at a location other than 340 Heizer Street.  Agent Conde represents that he had no basis or cause to reasonably believe that Underwood purchased the cocaine anywhere other than the residence at 340 Heizer Street.

Prior to May 15, 2003, Agent Conde's knowledge was that there was no ongoing investigation of any type involving the residence at 340 Heizer Street.  On May 15, 2003, when he completed the Affidavit and Application for Search Warrant, Agent Conde did not positively know the identity of any of the individuals residing at 340 Heizer Street.  The first time Agent Conde became aware of activities at 340 Heizer Street was on May 15, 2003, when he alleged seeing Travis Underwood exit the residence and bring him the cocaine.  On May 15, 2003, Agent Conde believed that Underwood purchased the cocaine from an unknown individual within the residence located at 340 Heizer Street.

**D. Underwood's Recollection**

Underwood represents that he purchased the cocaine from Baudilio Hernandez, who resided at 336 Heizer, the second trailer house to the south of the railroad tracks and the trailer house directly south of 340 Heizer.  Defendant notes that Underwood was seen leaving 340 Heizer.  Underwood represents he had previously purchased cocaine from Baudilio, but had never been in the residence at 340 Heizer Street.

Underwood knew that the residents of 340 Heizer were related to Baudilio, but he did not know them and had never met any of the residents before.

6

Underwood represents that he never told Conde that he was walking to the blue and green trailer on the south side of the railroad tracks and denied there was any reason he would have told Conde he was doing that.

Underwood represents he then proceeded to Baudilio's residence located at 336 Heizer, a peach or yellow-colored trailer house, entered the residence and completed the purchase of cocaine from Baudilio Hernandez.

Approximately four days after the search of 340 Heizer, or on May 19, 2003, Underwood was brought to the Ness County Sheriff's Department by Conde to be questioned about the purchase of cocaine which he had made from Baudilio on May 15, 2003.  During that interview Underwood discovered that Conde was a KBI agent and became aware of the fact that he was potentially going to be charged with the sale of cocaine.

Although Underwood knew he was in trouble, and was signed up on May 19, 2003, as a confidential informant by Conde, Underwood maintained that he had never entered the residence at 340 Heizer Street.  Underwood stated repeatedly that he had made the purchase from Baudilio and had gotten the cocaine from the tail pipe of Baudilio's car.  Underwood also gave a written statement stating that Baudilio had the cocaine ready in the tailpipe of the car.

### E. Plaintiffs' Recollection

Each of the plaintiffs testified that no one visited his or her house on May 15, 2003, and that no sale of cocaine or any other drug activity had taken place in their residence.  However, defendant notes that Enrique was at work during the day, he and Yesenia had gone to the store to buy groceries that day and that Carmen and Pedro may have been asleep.  Because of this, defendant asserts that plaintiffs cannot be certain that Underwood was never in their home on May 15, 2003.  On May 15, 2003, during the Underwood buy, Karen Byerly represents that she saw Underwood exit from the

second trailer house south of the railroad tracks.

**F. Byerly's Identity**

Plaintiffs were unable to take Byerly's deposition because Conde stated that he did not know the identity of the confidential informant in his interrogatory responses dated August 25, 2005. Plaintiffs did not learn the informant's identity until near the end of discovery.

During Agent Conde's deposition, Conde admitted, however, that approximately a year to a year and a half before Agent Conde's deposition, which was taken on January 19, 2006, he had been approached by Special Agent in Charge, Kelly Ralston, of the KBI in regard to working with Karen Henderson. Agent Conde was able to determine that Karen Henderson and Karen Byerly were the same person and refused to work with her again.

Sometime prior to October 24, 2005, defendant's counsel became aware of Byerly's identity and had the KBI print her "rap sheet," which gave not only Byerly's identity but her social security number, previous addresses and other names she went by, i.e., Karen Donner, Karen Henderson and Karen Byerly. However, defendant's counsel claims he only became aware of Byerly's identity at the November 9, 2005 interview in Hays, Kansas.

At some point prior to November 9, 2005, Karen Henderson a/k/a Karen Byerly had been interviewed by Brian Sheern and Kansas Bureau of Investigation Agent Tom Williams in regard to plaintiffs' case. During that interview, Karen Byerly was told by Sheern that "...if anybody came around not to talk to anybody, to call them immediately." Byerly went on to explain to the investigator, "But like I said...you know the truth, the truth is the truth. And it's the same today as it was back, you know, as it was a couple months ago and it's still going to be the same...." "...You know, two, two months from now. It's still going to be the same." Defendant notes that these statements were said in the context of providing safety and assurance to Karen Henderson because

she was frightened of violent repercussions from individuals.  Ultimately, Agent Conde amended his

original interrogatory responses on January 12, 2006, finally disclosing Karen Henderson a/k/a

Karen Byerly as the confidential informant who had been present during Underwood's purchase of

cocaine from Baudilio. The discovery deadline was extended one month, so plaintiffs could obtain

depositions.  However, plaintiffs did not depose this witness.

**G. The Audio Recordings**

At least two audio recordings were made of Conde's contact with Underwood and Karen

Byerly on May 15, 2003.  The recordings included the time frame when Underwood exited the

vehicle and then returned to the vehicle approximately ten minutes later after purchasing the

cocaine.  The first recording was made with a hand-held microcassette on Conde's person, the

second recording was made at the KBI offices in Great Bend, Kansas, by Agent Lyon of the KBI

over a "wire."

Agent Conde "recorded over" the cassette recording he made.  This erased the recording

from the time Underwood exited the vehicle through the end of the incident.

The recording made at KBI by Agent Lyon was turned over to Agent Conde.  However,

Agent Conde lost that recording.  Agent Conde returned to the KBI offices and filled out the search

warrant affidavit indicating that Underwood had "UNDERWOOD told SA Conde that he

(UNDERWOOD) was walking to the white trailer house with blue/green trim on the East side of

Heizer Street, just South of the railroad tracks."  Conde also included in the affidavit that "after

approximately ten minutes had elapsed, SA Conde observed Underwood emerge from the trailer and

crossed the railroad tracks toward SA Conde's position. SA Conde kept Underwood in sight the

whole time since Underwood emerged from the trailer."  In his deposition, defendant Conde recalled

that Underwood stating the following:

Q. No, what words did Underwood actually say to you while you were
in the car before he got out on May 15th of 2003?
A. I can't recall with certainty, but it's like do you, and he was
gesturing, *do you see that house with green, or something like
that*? And he said, you see that house there **behind it,** or
something, *or the other house*? *And he said, it's there, it's right
by there, some words to that type of effect*. So that's not verbatim,
I don't remember exactly how he phrased it.

(Conde depo., p. 121, l. 10-20) (emphasis added).

Conde admitted during his deposition that if he had not seen which trailer Underwood

actually exited from, there would be insufficient probable cause to obtain a search warrant.

Ultimately, a search warrant was issued based on Conde's representations in the search warrant

affidavit and a search was conducted at 340 Heizer just before midnight on May 15, 2003.  The

ensuing search, which occurred less than six hours after the buy had purportedly been made from

340 Heizer according to Agent Conde's affidavit, resulted in no evidence of drug activity and no

recovery of any of the "buy funds."

## III. ANALYSIS

Generally, the Eleventh Amendment shields from suit state officials acting in their official

capacity.  Wares v. VanBebber, 231 F. Supp. 2d 1120, 1124 (D. Kan. 2002).  In enacting 42 U.S.C.

§ 1983, Congress did not intend to abrogate state immunity.  Neal v. Lewis, 325 F. Supp. 2d 1231,

1235 (D. Kan. 2004).  Thus, when state officials act in their official capacities, they are entitled to

absolute immunity.  Id.  These officials are not considered "persons" within the meaning of 42

U.S.C. § 1983.  Id. citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-71, 109 S.Ct. 2304,

105 L.Ed.2d 45 (1989).

A public official performing a discretionary function enjoys qualified immunity in a civil

action for damages, provided his or her conduct does not violate clearly established federal statutory

or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982).  The immunity is "immunity from suit rather than a mere defense to

liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The Tenth Circuit places a presumption

in favor of immunity for public officials acting in their individual capacities.  Hidahl v. Gilpin

County DSS, 938 F. 2d 1150, 1155 (1991); Schalk v. Gallemore, 906 F.2d 491, 499 (10th Cir.

1990); Melton v. City of Oklahoma City, 879 F.2d 706, 728-29 (10th Cir. 1989), reh'g granted on

other grounds, 888 F.2d 724 (1989).  The Supreme Court notes that "[a]s the qualified immunity

defense has evolved, it provides ample protection to all but the plainly incompetent or those who

knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89

L.Ed.2d 271 (1986).

 To determine whether qualified immunity serves as a defense to a § 1983 action, the court

undertakes a two-step analysis.  PeTA, People for the Ethical Treatment of Animals v. Rasmussen,

298 F.3d 1198, 1207 (10th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150

L.Ed.2d 272 (2001)).  First, the court must determine whether the facts alleged state the violation of

a constitutional right.  Id.  And if so, the court must determine whether the constitutional right was

clearly established at the time of injury.  Id.  If the answer to either of these questions is "no," then

the defendant is entitled to qualified immunity.  Id.

 Determining whether government officials are immune turns in part on whether their actions

may be considered objectively reasonable.  Harlow, 457 U.S. at 818.  "[I]n some cases the

determination of objective reasonableness of a government official's conduct rests on establishing

whether the defendant acted with an impermissible motive or intent–a highly subjective factual

element." Lewis v. City of Ft. Collins, 903 F.2d 752 (1990), 755 (10th Cir. 1990). For complaining

parties to prevail on their Fourth Amendment claims against a government official, they must prove

11

he knowingly or recklessly made false statements in support of his Affidavit and Application for Search Warrant. Bruning v. Pixler, 949 F.2d 352, 356-357 (10th Cir. 1991). "Allegations of negligence or innocent mistake are insufficient." Beard, III v. City of Northglenn, Colorado, 24 F.3d 110, 114 (10th Cir. 1994) (quoting Franks v. Delaware, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676, 57 L. Ed. 2d 667 (1978)). "A reckless disregard for the truth exists when 'the affiant' in fact entertained serious doubts as to the truth of his allegations, . . . [and] a fact finder may infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations.'" DeLoach v. Bevers, 922 F.2d 618 (1990), 621-622 (10th Cir. 1990) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir.1984) (quoting St. Amant v. Thompson, 390 U.S. 727, 731-32, 88 S.Ct. 1323, 1325-26, 20 L. Ed. 2d 262 (1968), cert. denied, 470 U.S. 1003, 105 S.Ct. 1354, 84 L. Ed. 2d 377 (1985)).

Where defendants raise a qualified immunity defense, plaintiffs bear the burden of showing that defendants' action violated a federal constitutional or statutory right and that right was clearly established at the time of plaintiffs' arrest. Nelson v. McMullen, 207 F.3d 1202, 1205 (10th Cir. 2000). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). On the other hand, if a violation has been shown, the next step in the qualified immunity sequence is to ask whether the constitutional right was clearly established. Id. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition...." Id. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202.

Here, plaintiffs allege a violation of a clearly established constitutional right and that right

was clearly established at the time of injury.   "[T]he law was clearly established that an officer would violate a plaintiff's Fourth and Fourteenth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of an arrest or search warrant, if the false statement were material to the finding of probable cause."   Bruning 949 F.2d at 357; Franks v. Delaware, 438 U.S.154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Plaintiffs' allegations, however, quickly run aground because Agent Conde's actions are objectively reasonable. Although the officer did not see Underwood enter a trailer on Heizer, he clearly saw Underwood leave the trailer he believed to be 340 Heizer.  To the best of his knowledge, the officer represented this information in his application and affidavit for the search warrant.  There is no evidence that Conde recklessly disregarded the truth or was attempting to misrepresent what he saw.  There is no evidence that any of the informants specifically informed Agent Conde that he may have had the incorrect trailer prior to the issuance and execution of the search warrant.  There is no evidence that Agent Conde had any nefarious motives in applying for a warrant for 340 Heizer. Viewed in the light most favorable to plaintiffs, Agent Conde may have mistaken the house. However, there is no evidence of improper motive or recklessness.  There is also no evidence that Agent Conde entertained serious doubts as to the truth of his allegations.  An officer's reasonable but mistaken belief is entitled to qualified immunity.  Beard, III, 24 F.3d at 114.

Plaintiffs raise a number of arguments attempting to overcome Agent Conde's claim of qualified immunity.  Plaintiffs argue that there was an attempt to cover up Karen Byerly's identity. There is evidence that Agent Conde and his counsel delayed in turning over this name.  Despite visiting with Byerly as early as October or November 2005, the name was not turned over until January 2006.  At the same time, discovery was extended so plaintiffs could meet with this witness. Defense counsel notes that the name of the witness was turned over in November 2005 to Holland &

13

Holland Law Offices because the firm was representing Mr. Hernandez in both his criminal and civil case. There is no legitimate claim of a cover up.

Next, plaintiffs' argument that Conde intentionally destroyed key recordings is also without merit. The findings of fact indicate that the recording was partially erased, from the time Underwood exited the vehicle. This time period would at least give counsel some relevant information. Agent Conde's recording over one tape and loss of a second tape are unfortunate. However, there is no evidence that his actions were intentional or malicious.

Finally, plaintiffs misstate an excerpt of Agent Conde's deposition. Conde did try to recall his conversation with Underwood. Read in context, the deposition testimony was attempting to pinpoint whether Agent Conde should have written "to" or "toward" in the search warrant and whether this statement was a verbatim conversation with Underwood. This conversation noted that there was a reference to a house with green. The second statement about the "house there behind it" is ambiguous because it is not clear what "it" refers to. Plaintiffs argue that this refers to the house behind 340 Heizer, which would be 336 Heizer. Agent Conde indicates that he believed Underwood was gesturing toward 340 Heizer. Based on Agent Conde's full deposition and subsequent affidavit, Agent Conde was clear that he saw Underwood exit 340 Heizer. This is what he perceived and the information he included in his warrant. Again, Agent Conde's perception of events are objectively reasonable.

IT IS ACCORDINGLY ORDERED this 24th day of July 2006, that the court grants defendant's Motion for Summary Judgment (Dkt. No. 74).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE